UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                                   :

SEAN STUCKEY,                                                      :
                                           Petitioner,   :                     16-CV-1787 (JPO)
                                                                 :
                              -v-                                :                     06-CR-339 (BSJ)
                                                                 :
UNITED STATES,                                    :                 OPINION AND ORDER
                                                                 :
                                        Respondent. :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

       Pursuant to 28 U.S.C. § 2255, Petitioner Sean Stuckey seeks relief from a sentence imposed under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The applicability of the ACCA's fifteen-year mandatory minimum sentence to Stuckey hinges on whether his two prior convictions for Robbery in the First Degree under New York law, N.Y. Penal Law § 160.15, constitute "violent felonies" under the ACCA. Because the Court concludes that they do, the petition is denied.

**I.      Background**

       On January 10, 2008, Sean Stuckey was sentenced to imprisonment for 188 months plus ten days (that is, fifteen years, eight months, and ten days) after he was convicted of being a felon in possession of a firearm in violation 18 U.S.C. § 922(g)(1). (Dkt. No. 1 at 1, 7-8.) *See United States v. Stuckey*, 317 Fed. App'x 48, 49 (2d Cir. 2009). The crime for which Stuckey was convicted carries a statutory maximum penalty of ten years. 18 U.S.C. § 924(a)(2). But an ACCA sentencing enhancement requires a mandatory minimum of fifteen years where a defendant has three prior convictions for a "violent felony" or a "serious drug offense." *Id.*

§ 924(e)(1).  Stuckey has already served more than ten years: he has been in custody since April 2006.  (Dkt. No. 5 at 3.)

At the time he was sentenced, Stuckey had four prior convictions.  The parties agree that one of these crimes—second-degree assault in violation of New York Penal Law § 120.05(2)—is a violent felony under the ACCA and that another—second-degree robbery in violation of New York Penal Law § 160.10(1)—is not.  (Dkt. No. 5 at 1, 3; Dkt. No. 10 at 7 n.4.)  The parties disagree about whether the remaining two convictions—for Robbery in the First Degree in violation of New York Penal Law § 160.15(3) and § 160.15(4)—are violent felonies under the ACCA.  If they are, then a fifteen-year mandatory minimum applies.  If not, then a mandatory maximum of ten years, which Stuckey has already served, applies.

This case thus requires the Court to determine whether the first-degree robbery felonies defined by New York Penal Law § 160.15(3) and § 160.15(4) are violent felonies under the ACCA.  To do so, the Court must consider the language of the ACCA together with relevant precedent interpreting it, the categorical approach that is used to consider whether a crime is violent under the ACCA, and the particularities of New York's robbery statute.

### A.   The ACCA, *Johnson*, and *Leocal*

The ACCA provides for a fifteen-year mandatory minimum sentence for a person convicted under 18 U.S.C. § 922(g) who has "three previous convictions . . . for a violent felony or a serious drug offense, or both."  18 U.S.C. § 924(e)(1).  The statute defines "violent felony" to mean "any crime punishable by imprisonment for a term exceeding one year" that "has as an

element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B).[1]

Two recent Supreme Court decisions shed light on the meaning of the terms "use" and "force" in this provision of the ACCA.

In *Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson 2010*"), the Supreme Court clarified that "physical force," as used in § 924(e)(2), "means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140. The Court thus refused to treat the Florida felony offense of battery, which required as an element only "'[a]ctually and intentionally touch[ing]' another person," as a crime of violence under the ACCA, as the common-law definition of battery could be satisfied with less than violent force. *Id.* at 137.

In *Leocal v. Ashcroft*, 543 U.S. 1 (2005), the Supreme Court interpreted the word "use," in 18 U.S.C. § 16, a provision analogous to § 924(e)(2) of the ACCA.[2] The Court in *Leocal* held that "'use' requires active employment," and, in particular, that "use . . . of physical force . . . most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal*, 543 U.S. at 9 (internal quotation marks omitted). The Court thus refused to treat the Florida felony offense of driving under the influence as a crime of violence, as it did not require any intentional conduct. *Id.* at 10.

---

[1]   The ACCA also contains a residual clause, which includes as a violent felony any crime that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). However, the Supreme Court invalidated the ACCA's residual clause as unconstitutionally vague in *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson 2015*").

[2]   The *Leocal* Court was interpreting the term "crime of violence" for the purposes of determining whether the crime at issue amounted to an "aggravated felony" under the Immigration and Nationality Act. *Leocal*, 543 U.S. at 3. "[T]he statutory definition of 'crime of violence' in 18 U.S.C. § 16 . . . is very similar to § 924(e)(2)(B)(i), in that it includes any felony offense which 'has as an element the use . . . of physical force against the person or property of another.'" *Johnson*, 559 U.S. at 140.

### B. The Categorical Approach and the Modified Categorical Approach

In determining whether a crime constitutes a violent felony under the ACCA, courts do not look at the particular facts underlying a defendant's prior conviction. Rather, courts use what is referred to as the "categorical approach," focusing only on "the elements of the statute forming the basis of the defendant's conviction," to determine whether the minimum conduct necessary for a conviction amounts to a violent felony. *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). If the minimum conduct necessary for conviction is not sufficiently violent, the crime cannot be deemed a violent felony, regardless of the facts underlying any particular defendant's conviction.

However, this "focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684–85 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

Where a prior conviction is under a "divisible statute," that is, one which "sets out one or more elements of the offense in the alternative," a court may apply a "modified categorical approach." *Descamps*, 133 S. Ct. at 2281. This approach allows the court to "consult a limited class of documents," known as "*Shepard* documents," "to determine which alternative formed the basis of the defendant's prior conviction," and then requires the court to apply the categorical approach to the elements of the specific alternative under which the defendant was convicted. *Id.*; *see Shepard v. United States*, 544 U.S. 13, 26 (2005) (describing documents that courts may consider). Where the government fails to produce *Shepard* documents, a court determines

whether the "least of [the] acts" described in the statute can serve as a predicate offense. *Johnson 2010*, 559 U.S. at 137.

### C. New York First-Degree Robbery

This case requires the Court to determine whether first-degree robbery in New York constitutes a violent felony under the ACCA. The New York first-degree robbery statute provides:

> A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he *or another participant in the crime*:
>
> 1. Causes serious physical injury to any person who is not a participant in the crime; or
>
> 2. Is armed with a deadly weapon; or
>
> 3. Uses or threatens the immediate use of a dangerous instrument; or
>
> 4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . .

N.Y. Penal Law § 160.15 (emphasis added).

New York courts have interpreted the first-degree robbery statute to require proof of intent only as to the "forcible stealing," not as to any of the four enumerated aggravating factors elevating it to robbery in the first degree. *People v. Miller*, 661 N.Y.2d 211, 217 (N.Y. Ct. App. 1995). To obtain a conviction under the statute, the government must only prove robbery (with the requisite intent) plus the existence one of the four aggravators; the government need not, however, prove the defendant's intent as to any applicable aggravator. Thus, when an individual commits the crime along with another participant, "strict liability for an aggravating circumstance attaches to an accomplice, regardless of the latter's degree of intent, knowledge or conduct with respect to the aggravating circumstance." *People v. Gage*, 687 N.Y.S.2d 202, 204 (App. Div. 3rd Dep't 1999) (citing *Miller*, 661 N.Y.2d at 217); *see also, e.g.*, *People v. Fingall*,

24 N.Y.S.3d 704, 705 (App. Div. 2d Dep't 2016) ("[T]he prosecution was not required to prove that the defendant had prior knowledge of another perpetrator's intent to display an operable firearm, because such knowledge was not an element of robbery in the first degree."); *In re Angel V.*, 669 N.Y.S.2d 211, 211 (App. Div. 1st Dep't 1998) ("The presentment agency was not required to prove that [the defendant] intended or knew that the accomplice would threaten the immediate use of a dangerous instrument.").

### D.   Stuckey's Motions

Stuckey filed with this Court a Motion for Judgment Ordering Immediate Release on August 3, 2016, following the Second Circuit's (subsequently vacated) decision in *United States v. Jones*. (Dkt. No. 5.) *See United States v. Jones*, No. 15-1518 (2d Cir. Oct. 3, 2016). Stuckey had previously filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 on March 9, 2016 (Dkt. No. 1), following the Supreme Court's invalidation of the ACCA's residual clause in *Johnson 2015*, which applies retroactively to cases on collateral review. *See Welch v. United States*, 136 S. Ct. 1257 (2016).[3]

Stuckey initially argued that because the government had failed to produce documents identifying the subsections of the New York first-degree robbery statute under which Stuckey was convicted, the categorical approach should apply and that—following the then-governing decision in *Jones*—a conviction under the statute was not necessarily a violent felony. (Dkt. No. 5 at 2-3.)

However, the government then submitted two Certificates of Disposition, showing that Stuckey's two prior convictions from 1993 and 1994 were under subsections four and three of

---

[3]   At the time Stuckey filed his petition in March of 2016, the Supreme Court had not yet decided *Welch*, which was decided that April, but the government here conceded that *Johnson 2015* applied retroactively. (Dkt. No. 1 at 2 n.1.)

6

the New York first-degree robbery statute, respectively.  (Dkt. No. 10, Ex. B, Ex. C.)  *See United States v. Green*, 480 F.3d 627, 633 (2d Cir. 2007) (approving the use of New York Certificates of Disposition as *Shepard* documents).  This submission rebuts Stuckey's suggestion that the strict categorical approach should apply and opens the door for the application of the modified categorical approach to the specific subsections under which Stuckey was convicted.

Stuckey has not disputed that the modified categorical approach should apply, and has also not argued that these two subsections of the New York first-degree robbery statute—which impose liability where a defendant "[u]ses or threatens the immediate use of a dangerous instrument," N.Y. Penal Law § 160.15(3), or "[d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm," *id.* § 160.15(4)—are not "violent" under *Johnson 2010* when considered individually.

Instead, Stuckey now mounts a novel challenge focusing on the New York first-degree robbery statute as a whole, specifically pitched at the statute's "or another participant" language.  N.Y. Penal Law § 160.15.  Stuckey argues that New York first-degree robbery cannot constitute a "violent" felony under the ACCA (as interpreted in *Johnson 2010*), because the statute permits a violent aggravating factor to be performed by "another participant" and (as interpreted by New York courts) does not require intent as to the "use" of force (as required by *Leocal*).  (Dkt. No. 12.)  Put another way, Stuckey asks the court to consider whether, for multiple-defendant crimes, *Johnson 2010* and *Leocal* together require intent as to the use of violent force by each defendant.

The Court held oral argument on this question on September 16, 2016.

**II.     Discussion**

    **A.     The Applicability of *United States v. Jones***

In *United States v. Jones*, No. 15-1518 (2d Cir. July 21, 2016), the Second Circuit held that New York first-degree robbery was not categorically a crime of violence under the Career Offender Guidelines.[4] Though *Jones* was the instant catalyst for the filing of Stuckey's Motion for Judgment Ordering Immediate Release, the Second Circuit's decision in *Jones* has since been vacated pending the Supreme Court's decision in *Beckles v. United States*, No. 15-8544, 2016 WL 4218143 (Aug. 11, 2016).[5] *United States v. Jones*, No. 15-1518 (2d Cir. Oct. 3, 2016).

As a threshold matter, the vacatur of *Jones* does not impact the disposition of Stuckey's petition here. Of course, the Court cannot now rely on the Second Circuit's determination in *Jones* that the New York first-degree robbery statute is not categorically a crime of violence under the Guidelines (or, by analogy, the ACCA). But neither is the Court persuaded by the government's argument (Dkt. No. 18 at 1), that this issue is squarely decided by prior Second Circuit cases deeming New York robbery to be violent, all of which were decided before both *Leocal* and *Johnson 2010*, and none of which addresses Stuckey's argument here. *See, e.g.*, *United States v. Spencer*, 955 F.2d 814, 820 (2d Cir. 1992) (deeming third-degree robbery to be a crime of violence under the Career Offender Guidelines). Indeed, courts in this Circuit had ruled

---

[4] The Second Circuit in *Jones* first concluded that "New York's first-degree robbery statute is divisible, and thus eligible for the modified categorical approach, because it lists four categories of first-degree robbery." *Jones*, No.15-1518-cr at 10-11. The court then applied *Johnson*'s definition of "physical force" to the second subsection of the statute ("Is armed with a deadly weapon . . .") and concluded that "the presence of a gun that a robber does not display, use, or threaten to use during a robbery [does not have] any effect on the nature of the force that the robber exerts on his victim." *Id.* at 18. Thus, the Second Circuit held that "a New York robbery conviction involving forcible stealing, absent other aggravating factors, is no longer necessarily a conviction for a 'crime of violence.'" *Id.* at 15-16.

[5] In *Beckles*, the Supreme Court will determine, inter alia, whether *Johnson 2015* applies to the residual clause in the Career Offender Guidelines.

otherwise even prior to the Second Circuit's decision in *Jones*. *See, e.g.*, *United States v. Moncrieffe*, 2016 WL 913391, at *17 (E.D.N.Y. Mar. 10, 2016) (holding, prior to *Jones*, that New York robbery is not a crime of violence under 18 U.S.C. § 16).

Moreover, even were the now-vacated decision in *Jones* to apply, the Second Circuit in *Jones* did not address the subsections of the statute under which Stuckey was convicted (subsections 3 and 4), leaving their status an open issue on remand.[6]  *Jones*, No. 15-1518-cr at 16, 21.  Even if *Jones* had not been vacated, it would not control the disposition of Stuckey's petition.[7]

### B.     Stuckey's Argument

Stuckey focuses his argument on the portion of the New York first-degree robbery statute allowing for the actions "of another participant" to satisfy the aggravating violent predicate so as to elevate an ordinary robbery to robbery in the first degree.  N.Y. Penal Law § 160.15.  He argues that because New York robbery imposes strict liability as to the violent aggravators performed by "another participant in the crime," the other potentially non-violent participants do not have sufficient intent as to the use of force to justify treating their conviction as a violent felony under the ACCA.  Simply put, Stuckey interprets *Leocal*, in conjunction with *Johnson*

---

[6]    The Court agrees with (and neither party here disputes) the Second Circuit's conclusion in *Jones* that the modified categorical approach should apply to the New York robbery statute, as it is a "divisible statute," *Descamps*, 133 S. Ct. at 2281, which describes four discrete categories of first-degree robbery, *see Jones*, No.15-1518-cr at 12-13.

[7]    To the extent that *Jones* did discuss subsections 3 and 4, the opinion distinguished them from subsection 2, the subsection deemed to be non-violent.  *See Jones*, No.15-1518-cr at 16 (distinguishing "carrying a deadly weapon on his person," which falls under subsection 2, from "displaying, using or threatening the use of that weapon," which fall under subsections 3 and 4). And Stuckey does not argue that these two subsections considered individually under the modified categorical approach would be deemed not violent under the ACCA.

9

*2010*, to require intent as to the use of violent force by *each* defendant in a multiple-defendant crime.

Stuckey's argument here breaks new ground. Neither *Johnson 2010* nor *Leocal* addressed a multiple-defendant crime, nor does the ACCA's definition of violent felony speak directly to such crimes. The Court then must decide whether to employ a crime-by-crime approach—looking at the elements of a crime to determine whether it is a crime of violence, regardless of how many people can be guilty of its commission in a single transaction—or a defendant-by-defendant approach—looking at each individual defendant to assess whether it is categorically certain that he or she intended the commission of a sufficiently violent act in the course of the crime.

It is the former approach that this Court finds the ACCA to require, based on the statute's plain language and precedent interpreting it. The categorical approach under the ACCA allows courts to consider only "the elements of the statute forming the basis of the defendant's conviction," to determine whether they entail the use of physical force so as to amount to a crime of violence. *Descamps*, 133 S. Ct. at 2281. Courts look only at the elements of the crime itself and do not examine the facts of the particular case or the conduct of any particular defendant. *See United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) ("Under this categorical approach, we focus on the intrinsic nature of the offense rather than on the circumstances of the particular crime.") As regards those elements, the ACCA deems as a violent felony "any *crime* punishable by imprisonment for a term exceeding one year . . . that has an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B) (emphasis added). The statute's categorical language thus requires only that a violent felony be a felony that is violent, nothing more. It does not require that every participant in the felony

10

employ violent force himself or herself, nor does it require proof of intent to use violent force as to each individual defendant.

On this elements-based approach, the subsections of the New York first-degree robbery statute under which Stuckey was convicted satisfy this requirement—they have as an element the use of violent force. *See* N.Y. Penal Law § 160.15(3) (requiring for conviction the "[u]se[] or threaten[ed] immediate use of a dangerous instrument"); *id.* § 160.15(4) (requiring for conviction the "[d]isplay[] [of] what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm"). Stuckey has not disputed that these violent aggravators satisfy *Johnson 2010*'s requirement of "*violent* force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140.

When considering a prior conviction under the ACCA, the Court must take state criminal law as it finds it, and the New York statute itself makes no distinction between "principals" and "accomplices." That is, though the violent aggravator can be performed "by another participant," a court is not required to determine whether a particular defendant was the participant responsible for that aggravator, nor whether each defendant had intent as to the aggravator, only that the aggravator was present.[8] Even if the Court could determine that

---

[8] The New York robbery statute is distinguishable from the crime of facilitation at issue in *United States v. Liranzo*, 944 F.2d 73 (2d Cir. 1991), and the aiding and abetting statute at issue in *Rosemond v. United States*, 134 S. Ct. 1240 (2014). Both facilitation and aiding and abetting constitute separate crimes from the underlying substantive offense and require proof of different elements for conviction. In *Liranzo*, the Second Circuit held that the crime of facilitation in the second degree under New York law did not amount to a "controlled substance offence" under the Career Offender Guidelines because it "does not involve the *intent* to commit the underlying substantive offense." *Liranzo*, 944 F.2d at 78. Similarly, in *Rosemond*, the Supreme Court held that in order to aid and abet a drug trafficking crime under 18 U.S.C. § 924(c), the aider must know that his confederate will carry a gun so as to ensure that he has "chosen . . . to align himself with the illegal scheme in its entirety." *Rosemond*, 134 S. Ct. at 1249. In contrast, the New York robbery statute prescribes the exact same intent requirement for all defendants, not

Stuckey himself was not, in fact, the one who used or brandished a firearm, this fact would not impact the categorical determination as to whether subsections 3 and 4 of New York robbery in the first degree amount to violent felonies under the ACCA.

To overcome this aspect of the New York law, Stuckey encourages the Court to combine *Leocal* and *Johnson 2010* to hold that in order for an individual's prior conviction to be deemed a violent felony under the ACCA, that individual must have intended the use of violent force. Stuckey focuses here on the New York robbery statute's failure to require proof of intent as to the aggravating violent conduct that elevate the crime to robbery in the first degree, which can be performed by one individual without the knowledge or intent of the other participants in the crime. *See Miller*, 87 N.Y.2d at 217 (N.Y. 1995) ("[T]he People bear no greater burden to establish a robber's culpable mental state when that person is charged with first degree robbery as compared to a second or third degree robbery. Rather, it is the presence of statutorily designated aggravating factors which elevates the severity of the crime from a robbery in the third degree to a robbery in the second or first degree.")

Stuckey correctly argues that the Supreme Court in *Leocal* required a minimum amount of intent to justify treating a *crime* as violent. *Leocal*, 543 U.S. at 9 (requiring a "higher degree of intent than negligent or merely accidental conduct"). As discussed above, the Court in *Leocal* was considering Florida's driving under the influence ("DUI") statute, which made it a felony "for a person to operate a vehicle while under the influence and, 'by reason of such operation, caus[e] . . . [s]erious bodily injury to another,'" but did "not require proof of any particular mental state." *Id.* at 7 (alterations in original) (quoting Fla. Stat. § 316.193(3)(c)(2)). Interpreting the phrase "use . . . of physical force against the person or property of another," in

---

requiring as an element proof of any individual intent as to the use or display of the firearm by any particular defendant. *See People v. Miller*, 87 N.Y.2d 211, 217 (N.Y. 1995).

the definition of a "crime of violence" under 18 U.S.C. § 16(a), a unanimous Court held that Florida's DUI statute did not necessarily require the "use" of force because such force could be applied "negligent[ly] or merely accidental[ly]." *Id.* at 9.

But the New York robbery statute satisfies *Leocal*'s baseline intent requirement by requiring a level of intent more than "negligent or merely accidental conduct." The statute requires a defendant to "forcibly steal[] property," which it defines as "in the course of committing a larceny, [defendant] uses or threatens the immediate use of physical force upon another person." N.Y. Penal Law § 160.00. This requirement has been interpreted by New York courts to mean that that "the force applied must be *intended* by the perpetrator to effectuate the underlying crime of larceny." *People v. Chessman*, 75 A.D.2d 187, 193 (N.Y. App. Div. 2d Dep't 1980) (emphasis added). And the underlying crime of larceny itself requires "intent to deprive another of property or to appropriate the same." *People v. Jennings*, 69 N.Y.2d 103, 118 (N.Y. 1986) (quoting N.Y. Penal Law § 155.05(1)). Each defendant convicted of robbery must have this intent, whether acting as principal or accomplice in the underlying act. *See People v. Gage*, 259 A.D.2d 837, 838, 687 N.Y.S.2d 202, 204 (1999) (requiring "shared intent as to . . . forcible stealing").

For Stuckey's argument to succeed, then, the Court would have to read *Leocal* to require proof of intent *as to the use of violent force* in order for a crime to be deemed violent under the ACCA. But is it not clear that this is a strict requirement under the ACCA and *Leocal*. And to the extent that intent as to the use of force is indeed required, the subsections of the New York first-degree robbery statute (under which Stuckey was convicted) likely satisfy this requirement.

The ACCA does not require proof of intent as to the use of violent force to be an element of the underlying conviction in order for it to amount to a violent felony. The language of the

relevant provision of the ACCA focuses only on aspects of the crime itself, not the intent required to commit it, requiring a violent felony to have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B). The ACCA does not speak to intent and does not prescribe a mens rea requirement relating to the use of force. And though *Johnson 2010* elevated the floor for what counts as "physical force," it also does not speak to intent. Stuckey has not pointed the Court to any caselaw suggesting otherwise.

Any intent requirement, then, must draw its support from applying *Leocal*'s interpretation of the word "use" to this provision of the ACCA. But *Leocal*—in which the Court was addressing a statute with *no* intent requirement at all—requires nothing more than a minimum threshold of intent for the commission of the crime, not proof of intent specifically as to the use of violent force as defined by *Johnson 2010*. *See Leocal*, 543 U.S. at 9 ("[T]he 'use ... of physical force against the person or property of another'—most naturally suggests a higher degree of intent than negligent or merely accidental conduct." (quoting 18 U.S.C. § 16(a))).

The ACCA requires only that a crime satisfy *Leocal*'s minimum intent threshold and that it separately clear *Johnson 2010*'s "violent force" bar to be deemed a violent felony—nothing more. Neither the Supreme Court nor the Second Circuit has yet interpreted these independent requirements to work in concert to require a heightened intent threshold as to the use of violent force, and this Court cannot infer the connection Stuckey argues for. This reading of *Johnson 2010* and *Leocal* as imposing discrete requirements is well supported by precedent from outside this Circuit. *See, e.g.*, *United States v. Rafidi*, 829 F.3d 437, 446 (6th Cir. 2016) ("[I]f a defendant commits a violation of [the federal crime of forcibly assaulting a federal law-enforcement officer] through intentionally causing physical contact with the federal officer—even if this physical contact is not in itself "capable of causing physical pain or injury," *Johnson*

*2010*, 559 U.S. at 140—[the statute]'s additional required element of using a deadly weapon during this encounter would elevate this lower degree of physical force into 'violent force' sufficient to establish [the statute] as a 'crime of violence.'"); *United States v. Ramon Silva*, 608 F.3d 663, 673 (10th Cir. 2010) ("The presence or absence of an element of specific intent does not dispositively determine whether a prior conviction qualifies as a violent felony under the ACCA. . . . Because [defendant] admitted to engaging in conduct constituting the threatened use of physical force, and admitted to engaging in that conduct intentionally, his aggravated assault conviction qualifies as a violent felony."); *see also United States v. Am*, 564 F.3d 25, 34 (1st Cir. 2009) ("[E]xamin[ation] of the mens rea requirement of the predicate offense is not required"; "[b]ecause the state . . . had to show that [defendant] acted intentionally, his conviction for assault by means of a dangerous weapon thus constituted a 'crime of violence' for purposes of career offender status."). Unless and until this Circuit rules otherwise, this Court is bound to take *Johnson 2010* and *Leocal* at their word—that is, separately.

Even assuming that a broader reading of *Leocal* requires intent as to the use of force, as applied to the particular provisions under which Stuckey was convicted, it would be a stretch to find that the use of force required by those provisions could occur negligently or accidentally. *Cf. Leocal*, 543 U.S. at 9. Subsection 3 of the New York first-degree robbery statute requires a defendant to "[u]se[] or threaten[] the immediate use of a dangerous instrument." N.Y. Penal Law § 160.15. And Subsection 4 requires a defendant to "[d]isplay[] what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm," and provides for an affirmative defense where the firearm "was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged." *Id.* The language of the statute, which provides for "use" or "display" of a loaded firearm, is written with verbs describing

15

intentional action—indeed the word "use" was precisely the word into which the Supreme Court in *Leocal* read a requirement of intent—and New York courts have interpreted the statute to preclude application to unwitting users or displayers of firearms.  *See, e.g.*, *People v. Grant*, 959 N.E.2d 479, 484 (N.Y. 2011) ("[I]t is the actual 'employment' of a dangerous instrument that elevates the use or threat of physical force to first-degree robbery [under 160.15(3)]."); *People v. Jackson*, 180 A.D.2d 756, 756 (N.Y. App. Div. 2d Dep't 1992) ("In order to satisfy the '[d]isplays what appears to be a ... firearm' element of Penal Law § 160.15(4), the evidence must establish that the defendant or his accomplice *consciously displayed* . . . a firearm, with the intent of forcibly taking property from another . . . ." (emphasis added)).  Stuckey does not argue otherwise and does not point to cases suggesting that these subsections can be satisfied absent intentional use of force.  (Dkt. No. 10 at 7.)  *See Duenas-Alvarez*, 549 U.S. at 193 (requiring a petitioner to "at least point to his own case or other cases in which the state courts in fact did apply the statute in the special . . . manner for which he argues").

In order for Stuckey's argument here to succeed, the Court would have to take one of two paths.

The first alternative would require the Court to conclude that *Leocal* and *Johnson*, taken together, require proof of intent as to the use of force to be an *element* of the underlying conviction, which the New York statute lacks.  Assuming (as the Second Circuit did in its now-vacated opinion in *Jones*) that the baseline New York first-degree robbery offense is not necessarily a violent felony, the statute would not satisfy this heightened requirement due to the imposition of strict liability (that is, no intent requirement) as to the aggravating factors.  There may be good reason for such a rule—namely, ensuring that the government has proven beyond a reasonable doubt that defendants subject to sentencing enhancements as armed career criminals

16

in fact intended the specific behavior (the use of violent force) that triggers the enhancement—but this is not the rule that Congress or the courts have adopted.

In the alternative, to rule for Stuckey, the Court would have to adopt his argument that *Leocal* and *Johnson 2010* together require proof that each individual defendant in a multiple-defendant crime intended the use of violent force for their conviction to qualify as violent felonies under the ACCA. This argument exposes a tension between the focus on *crimes* and *elements* required by the categorical approach, and the focus on individual *defendants* that animates the ACCA's sentencing enhancement in the first instance. Indeed, it might seem illogical to say that Stuckey was himself convicted of a violent felony when it is possible that he is being held strictly liable for violent actions of a codefendant of which he lacked any knowledge, let alone intent. But this is what current law under the ACCA and the categorical approach requires. It is also the better reading of the text of the statute, which refers to "crimes" and "elements" in defining a predicate "violent felony." Moreover, this approach comports with traditional understandings of accomplice liability. *See* Francis Bowes Sayre, *Criminal Responsibility for the Acts of Another*, 43 Harv. L. Rev. 689, 703-04 (1930) ("[E]ven if the particular criminal act has not been authorized or consented to, if it grows out of and is the proximate consequence of one that has been authorized or procured, the defendant is criminally liable, whether or not the agent is acting in the course of the defendant's business."). *But see* Model Penal Code § 2.06(3) (requiring an accomplice to act "with the purpose of promoting or facilitating the commission of the offense"). Though both *Leocal* and *Johnson 2010* widened the gap between state-law crimes and ACCA predicates, when the New York robbery statute satisfies both *Leocal*'s intent requirement and *Johnson 2010*'s violent-force requirement, this Court does not see a basis for further widening that gap.

### C. Additional Considerations

Though the Court adopts the government's interpretation of the ACCA as it applies to the New York robbery statute for the reasons discussed above, it is important to note certain alternative justifications that the Court does not adopt.

First, the Court is uncertain as to whether the consequences of an alternative ruling are as severe as the government suggests. (Dkt. No. 19 at 27 (claiming that Stuckey's position "would yield absurd results")). A contrary ruling would not preclude New York from convicting defendants under its first-degree robbery statute, nor would it preclude judges from applying mandatory minimum sentences under the ACCA. It would merely prevent the former from becoming a justification for the latter.

Second, the Court does not find that Stuckey's unwitting accomplice theory fails because it is a mere product of "legal imagination." *Moncrieffe*, 133 S. Ct. at 1684 (quoting *Gonzales*, 549 U.S. at 193). There is a "realistic possibility" that a defendant could share a co-defendant's intent to commit a robbery yet have no knowledge or intent as to the latter's ultimate use of a firearm.[9] *Id.* (quoting *Gonzales*, 549 U.S. at 193). Stuckey points to multiple New York court decisions where this was likely the case. *See, e.g.*, *People v. Murdough*, 733 N.Y.S.2d 78, 79 (N.Y. App. Div. 2d Dep't 2001); *People v. Mitchell*, 652 N.Y.S.2d 956, 956 (N.Y. App. Div. 1st Dep't 1997). And, indeed, it is possible that this was the case here with Stuckey's underlying first-degree robbery convictions. (Dkt. No. 19 at 5-6.) *See Gonzales*, 549 U.S. at 193 ("To show

---

[9]  The case at hand is distinct from the Second Circuit's recent decision in *United States v. Hill*, 832 F.3d 135 (2d Cir. 2016). In *Hill*, the Second Circuit held that Hobbs Act robbery, 18 U.S.C. § 1951(b)(1), did not constitute a crime of violence under 18 U.S.C. § 924(c)(3), in part because the various hypotheticals presented under which Hobbs Act robbery could be committed without physical force were not realistically probable. *Hill*, 832 F.3d at 142-43. This case also differs from *Hill* in that the Second Circuit in *Hill* was considering a different crime—Hobbs Act robbery rather than New York state robbery—for the purposes of a different sentencing enhancement—section 924(c) rather than section 924(e). *Id.* at 143.

[a] realistic probability, an offender, of course, may show that the statute was so applied in his own case.").

### III.     Conclusion

For the foregoing reasons, Stuckey's Motion to Vacate, Set Aside or Correct Sentence and his Motion for Judgment Ordering Immediate Release are DENIED.

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:  December 1, 2016
        New York, New York

_____
                    J. PAUL OETKEN
                    United States District Judge